IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | No. 1:19-bk-02063-HWV |
|   QUANTUM TRASPORTATION, LLC, | 1:19-bk-02066-HWV |
| J.P. DONMOYER, INC., F.T. SILFIES, | 1:19-bk-02067-HWV |
| INC., ONO TRANSPORT SERVICES, | 1:19-bk-02068-HWV |
| INC., FOUNDRY SERVICES | 1:19-bk-02069-HWV |
| CORPORATION, INC. AND PRICE | 1:19-bk-02070-HWV |
| TRUCKING, INC. | |

Chapter 11

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING THE DEBTORS-IN-POSSESSION TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364; AND (B) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**

The Motion of Quantum Transportation, LLC ("Quantum"), J.P. Donmoyer, Inc. ("Donmoyer"), Ono Transport Services, Inc. ("Ono") and Foundry Services Corporation, Inc. ("FSC") (individually a "Debtor" and collectively the "Borrowing Debtors"), by and through its attorneys, Cunningham, Chernicoff & Warshawsky, P.C. for Entry of Interim and Final Orders (a) Authorizing the Debtors-In-Possession to Obtain Post-Petition Financing Pursuant to 11 U.S.C. § 364; and (b) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 (the "Financing Motion") is as follows:

1. On May 13, 2019, the Debtors each filed Voluntary Petitions for Relief under Chapter 11 of the United States Bankruptcy Code ("Code"). As a result thereof, each of the Debtors have been appointed debtors-in-possession and manage their assets and operate their businesses. F.T. Silfies, Inc., an affiliate of the Borrowing Debtors, also filed a Petition under Chapter 11 on the same date ("Silfies").

2. J.P. Donmoyer, Inc. is a business corporation which is engaged in the trucking business which is located in Lebanon County, Pennsylvania. Donmoyer also owns 100% of FSC.

3. Quantum is a limited liability company that owns 100% of Silfies.

4. F.T. Silfies, Inc. ("Silfies") is a business corporation which formerly was engaged in the trucking business.

5. Silfies is the 100% owner of Ono Transport Services, Inc. In turn, Ono Transport Services, Inc. is the 100% owner of Donmoyer. Silfies also owns Price Trucking, Inc. ("Price").

6. Price owns four (4) tractors utilized by other Debtors.

7. Pre-Petition, the Debtors had an arrangement with Quality Carriers, Inc. ("Quality"), whereby Donmoyer, FSC and various affiliates of Donmoyer and Silfies would provide trucking services to Quality for Quality's customers. In return, Quality would pay to Donmoyer and Silfies certain amounts based upon a fee schedule, after deduction by Quality of certain costs and other charges.

8. As part of the arrangement for payment for services provided by Donmoyer and FSC and its affiliates all payments by Quality were made to an account held by Silfies.

9. Quality is agreeable to continuing the arrangements post-Petition whereby Donmoyer and Foundry Services Corporation will continue to provide trucking services to Quality for Quality's customers.

10. The Borrowing Debtors, with other entities, are entering into an Agreement of Sale to sell its various personal property, excluding accounts receivable and other assets. Such proposed buyer is Quality. Quality has also agreed to assume various leases with respect to tractors and trailers. It is believed that the total value of the transaction as proposed is at least approximately $13,000,000.00.

11. The Debtors are seeking to maintain their assets so as to maximize the value to be achieved from a sale of the Debtors' assets. In order to do so, and so as to allow the Debtors to maintain business relationships, pay its employees and otherwise finance the expenses of the Debtors, the Debtors need to secure additional financing.

12. The Borrowing Debtors set forth above do not have sufficient available sources of working capital and financing to maintain their assets, or use funds for other general purposes in the ordinary course of their businesses, as well as satisfy the various costs which are part of the Chapter 11 cases.

13. As a result of the cash needs of the Borrowing Debtors, the Borrowing Debtors have sought financing on an unsecured and secured basis. The only post-Petition financing which the Borrowing Debtors have been able to secure is a Debtor-in-Possession loan from Quality.

14. Quality is agreeable to providing financing sufficient to allow the Debtors to continue to maintain their assets and utilize the funds in accordance with the Borrowing Debtor's cash needs as set forth below. The financing to be provided by Quality to the Borrowing Debtors will be utilized by each of the Borrowing Debtors as is necessary for the operations of such Debtors and of Silfies post-Petition.

15. This Motion is filed under Sections 105, 361, 363 and 364 of the Code and Rule 4001(b) and (c) of the Federal Rules of Bankruptcy Procedure. The court has jurisdiction of this matter pursuant to 28 U.S.C. §§157 and 1334, venue pursuant to 28 U.S.C. §§1408 and 1409 and this matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

**PRE-PETITION LIENS**

16. The only liens of which the Borrowing Debtors are aware as to the assets of the Debtors which might constitute Cash Collateral is a possible lien against Donmoyer filed by the Pennsylvania Department of Labor & Industry, Office of Unemployment Compensation Taxes ("L&I"). Nonetheless, the Borrowing Debtors do not believe that the filing of the lien by L&I constitutes a lien upon the Debtor's assets for among other reasons, as such lien may have been filed within the preference period of time. Also, the Debtor dispute that it is indebted to L&I in such amount.

17. Certain vehicles, rolling stock and other equipment of the Debtors are subject to liens in favor of Eagle Bank, Mercedes/Deimler and BMO Harris as set forth on Exhibit B to the Agreement (hereinafter the "Excluded Personal Property").

18. The pre-Petition assets of Donmoyer and FSC, consist of various equipment, including over-the-road trucks, tractors and trailers. Such entities have accounts receivable and cash of a minimal amount.

19. The Borrowing Debtors have assets having values as follows:

    a. Donmoyer owns a minimal amount of Equipment. Donmoyer has accounts receivable in a minimal amount. Donmoyer owns FSC which has no equity.

  b. FSC Equipment having a value of approximately $150,000.00. FSC has minimal accounts receivables.

  c. Ono owns Donmoyer.

  d. Quantum owns real estate in Nazareth, Pennsylvania, which has a value of $800,000.00, on which there is a mortgage lien in the amount of approximately $360,000.00.

20. As set forth above, it is believed that the lien of L&I does not attach to the Cash Collateral of Donmoyer.

21. It is anticipated that the only entities which will generate new accounts receivables will be Donmoyer and FSC. While the Debtors do not believe that any entity has a lien on Cash Collateral, nonetheless, both Donmoyer and FSC have filed Motions to Approve the Use of Cash Collateral. Such Motions are filed contemporaneously or prior to this Motion.

## THE NEED FOR FINANCING AND USE OF CASH

22. Donmoyer currently has one hundred eighty-six (186) employees. FSC currently has twenty-five (25) employees. Silfies does not currently have any employees. The Debtors are operating and need to retain their employees to continue operations.

23. As part of the sale process, the buyer is requesting that the Debtors continue in operation until closing on the sale of their assets.

24. The Debtors have minimal cash on hand and inventory. While the Debtors have some receivables, generally, it receives weekly payments from Quality for services rendered on behalf of Quality and expends all such funds by the time of the next weekly payment from Quality. In the past, the Debtors have suffered losses and Quality has had

to advance funds. During the period of time within which the Debtors intend to operate, the Debtors will not have sufficient cash flow with which to continue to operate without the financing set forth in this Motion.

25. As set forth above, the Borrowing Debtors do not have available sufficient sources of working capital and financing to maintain their assets, use funds for operations in the ordinary course of business and to continue in Chapter 11 without new financing.

26. The Debtors' various cash needs are set forth on Exhibit "A" which is a cash flow budget of the Debtors through August, 2019.As the budget sets forth, Debtor-in-Possession financing is necessary.

27. A review of the budget sets forth that the Debtors, at various times, will have financing needs of up to $1,250,000.00. The Debtors also need an immediate financing of $500,000.00, which sum is needed within the next fifteen (15) days (the "Interim Financing"). The Debtors believe they will need up to $1,250,000.00 in total financing in order for their operations to continue until such time as a sale occurs.

## PROPOSED FINANCING

28. Quality, has offered to extend financing to the Debtors in the total amount of $1,250,000.00. Attached hereto as Exhibit "B" and made a part hereof is a Debtor-in-Possession Loan and Security Agreement (the "Loan Agreement") to be entered into between Quality and the Debtor setting forth the terms and conditions of such loan.

## NEED FOR CASH AND TERMS

29. The significant terms of the Agreement between the Debtor and Quality are as follows:

a. Total amount of the proposed financing is $1,250,000.00, with $300,000.00 to be provided for immediate financing for the next fifteen (15) days. It is intended that such advances will be done on a revolving basis (the "DIP Revolving Facility).

b. The following fees will be charged as part of the DIP Revolving Facility:

   i. A facility fee of 200 basis points

   ii. An unused fee of 50 basis points.

c. The Debtors will pay all reasonable fees and expenses related to underwriting documentation, Bankruptcy Court approval, closing, administration enforcement of the loan and reasonable fees of loan documentation and bankruptcy counsel.

d. The Loan Agreement will terminate upon the earlier of either approximately ninety (90) days after the Chapter 11 Petition dates or seventy (70) days after the Petition Date if an Order approving the sale of the Debtors' assets to Quality has not been entered. Other termination events would include lift stays being granted or the conversion of these cases

e. The collateral to be granted to Quality as the lender includes all existing and after acquired personal property and all other assets of the Borrowing Debtors (except for all Chapter 5 causes of action and the proceeds thereof and the Excluded Personal Property), as well as all post-Petition assets of the Borrowing Debtors.

f. Such lien granted to Quality is to have a first priority status, junior only to a Carve-Out and certain permitted or existing liens to the extent that any exist. The lien is also junior to any fees to the Office of the U.S. Trustee. The Loan Agreement provides for a Carve-Out for certain professional fees of the Debtors and any Committee and a Chapter 7 Trustee, if any, and fees of the United States Trustee, in the total amount of $60,000.00. Chapter 7 expenses, if any, may be up to $10,000.00. Such Carve-Out is in addition to any payments set forth in the budget to be made to any professionals of the Debtors or any payments to the Office of the U.S. Trustee. The Carve-Out for professional fees and fees to the Office of the U.S. Trustee shall be in the amount of $100,000.00, which is included in the $150,000.00 set forth above.

## INTERIM AND FINAL FINANCING

30. It is requested that the financing be granted under Section 364(d)(1) of the Bankruptcy Code as to the assets of the Borrowing Debtors. To the extent that there is insufficient collateral, Quality is granted a super-priority administrative expenses status subordinate only to the Carve-Out, which Carve-Out is intended to benefit professionals and the Office of the U.S. Trustee.

31. As set forth above, the Debtor attempted to obtain unsecured financing and have been unable to do so. Because of the nature of the Debtors' businesses and the operations involving Quality, no party is agreeable to lending to the Debtors based upon the Debtors' current financial situation, either on an unsecured or secured basis.

32. With respect to the providing of financing on a first priority secured status pursuant to Section 364(d)(1) of the Bankruptcy Code, the Debtors have been unable to obtain credit without the granting of such liens. As set forth above, the Debtors are unaware of any liens on its current receivables or Cash Collateral.

33. Because of the nature of the loan to the Debtors, in addition to the Cash Collateral Motions filed by Donmoyer and FSC, it is requested that the Order approving the financing, both on an interim and final basis, provide that the Debtors shall have the right to use Cash Collateral conditioned upon compliance with the Budget and providing for remedies in the event of default and the use of Cash Collateral, including, but not limited to, notice to the Debtors of any alleged default.

34. Quality has acted in good faith in connection with the proposed providing of the financing set forth in this Motion. It is therefore requested that the Order

approving the interim and final financing provide that Quality shall be afforded the protections of Section 364(e) of the Bankruptcy Code as having acted in good faith such that any funds which are advanced pursuant to the Interim Order shall not be affected by any further determination regarding any such advances.

35. Set forth above and as set forth in the Budget which is attached hereto as Exhibit "A" are the cash needs of the Debtors. In order to assure the Debtors of their continued operations, the Debtors are requesting that it be awarded approval of the financing set forth above on an interim and emergency basis in an interim amount of $500,000.00 of the total amount of $1,250,000.00.

36. Unless the interim funding is awarded on an emergency basis, the Debtors will suffer irreparable harm. Further, the Debtors may not be able to close on the sale of their assets without the financing as the Debtors will not be able to sell its business and assets as a going concern thereby causing a dimunition in the amount realized from a sale.

37. Bankruptcy Rule 4001(c)(2) provides that this Court may commence a final hearing on this Motion within fourteen (14) days after service of this Motion; however, an earlier hearing may be conducted to allow interim borrowing authority to the extent that authorization of the requested credit is necessary to avoid immediate and irreparable harm to the Debtors' estate pending a final hearing. The Debtors believe that it is necessary that it continue to operate so that it can have the ability to move forward as to the sale of its assets. In the event the Debtors must cease operations, the Debtors believe the value of their assets will become much lower.

38. Therefore, as set forth above, the Debtors believe that unless the Court set a hearing date sooner than fourteen (14) days from the date of service of this Motion and grant interim emergency relief pending the final hearing on the Motion, that its estate may suffer immediate and irreparable harm pending a final hearing. The Debtors request that an emergency hearing be set as early as possible on this Motion and that at such hearing interim authority be granted to the Debtors to borrow $500,000.00.

39. The Debtors also requests that at the final hearing on this Motion, that they be permitted to borrow the $1,250,000.00 set forth above.

**WHEREFORE**, Debtors request this Honorable Court enter an order:

    a. Setting an emergency hearing on this matter at the earlier possible date, with respect to the Debtors' incurring debt and borrowing money from Quality Carriers, Inc.;

    b. Providing that Quality Carriers shall have a lien on the personal property of the Borrowing Debtors having priority over all other liens and claims, except for the Carve-Out;

    c. Providing that Quality Carriers has acted in good faith pursuant to Section 364(e);

    d. Providing that, to the extent there is insufficient collateral, Quality Carriers shall have an administrative claim having priority over all other administrative claims except for the Carve-Out which Carve-Out is intended to benefit case professionals and fees of the United States Trustee;

    e. Setting a final hearing on this matter as early as possible on or after fourteen (14) days from the filing date hereof;

    f. Pending the final hearing on this matter, granting interim authority to the Debtors as set forth in Paragraph (a) and up to the amount of $300,000.00;

g. Authorizing the Debtors entry into and execution of the Debtor-in-Possession Loan and Security Agreement;

h. Providing for the entry of an Order in the form requested by the Debtors approving the financing as set forth in the above Motion;

i. After the final hearing, grant all relief, borrowing authority and the lien status to Quality Carriers, Inc., as set forth above for the loan in the total amount of $1,250,000.00, and entering an Order in the form requested by the Debtors providing for the lending by Quality Carriers and the use of such funds, including the use of Cash Collateral by the Debtors; and

j. Award the Debtors such other and further relief as is just and proper.

Respectfully submitted:

CUNNINGHAM, CHERNICOFF
& WARSHAWSKY, P.C.

By: /s/ Robert E. Chernicoff
Robert E. Chernicoff, Esquire
Attorney I.D. No. 23380
2320 North Second Street
P. O. Box 60457
Harrisburg, PA 17106-0457
(717) 238-6570

Date: May 14, 2019